UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE UNITED STATES OF AMERICA, *ex rel.*
W. BLAKE VANDERLAN, M.D.                                              PLAINTIFFS

V.                                                          CIVIL ACTION NO. 3:15-CV-767-DPJ-FKB

JACKSON HMA, LLC d/b/a
CENTRAL MISSISSISSIPPI MEDICAL CENTER;
a/k/a MERIT HEALTH CENTER–JACKSON                                    DEFENDANT


ORDER

        This suit under the False Claims Act (FCA) is before the Court on two motions to dismiss

and four collateral motions related to discovery and briefing schedules.  In general terms, the

Court rejects Dr. W. Blake Vanderlan's requests to conduct discovery and instructs him to file a

response to the United States' motion to dismiss consistent with this ruling.

I.      Background

        The FCA states that a "private person," referred to as the "relator," "may bring a civil

action for a violation of [the FCA] for the person and for the United States Government.  The

action shall be brought in the name of the Government."  31 U.S.C. § 3730(a).  Although he or

she may suffer no injuries, "the *qui tam* relator stands in the shoes of the government, which is

the real party in interest."  *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d

1148, 1154 (2d Cir. 1993).  That said, the relator has a right to share in the recovery, plus receive

attorneys' fees and costs.  31 U.S.C. §§ 3730(b), (d).

        Dr. W. Blake Vanderlan invoked the FCA on October 23, 2015, when he sued his former

employer, Jackson HMA, LLC d/b/a Central Mississippi Medical Center, a/k/a Merit Health

Center-Jackson ("Jackson HMA" or "JHMA").  Vanderlan premises his FCA claim on the

Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd.  EMTALA is often referred to as "the 'anti-dumping' statute," and its 1986 passage reflected Congress's "growing concern that hospitals were dumping patients who could not pay" by refusing to admit them to the emergency room or prematurely transferring them to other hospitals before their emergency conditions stabilized.  *Miller v. Med. Ctr. of Sw. La.*, 22 F.3d 626, 628 (5th Cir. 1994).  And here, Vanderlan says Jackson HMA violated the statute by transferring uninsured African-American trauma patients to another hospital.

After considerable delay, the United States declined to intervene, so Vanderlan pursued this *qui tam* action as the Relator in the name of the Government to enforce the United States' rights under EMTALA and the FCA.  The United States now wants him to stop and has moved to dismiss Counts I, II, III, V, and VI of the First Amended Complaint.  Gov't Mot. [80].  That would leave only Vanderlan's retaliation claim (Count IV) against Jackson HMA, for which Jackson HMA has its own Motion to Dismiss [51].

As often occurs, this *qui tam* action has moved slowly and is currently stayed pending rulings on the dispositive motions.  *See* Order [77] at 7–8.  But Vanderlan wants the Court to lift that stay and allow expansive discovery before he responds to the United States' motion to dismiss.  He pursues those requests in three motions:  (1) motion to reopen discovery and set evidentiary hearing [83]; (2) motion to suspend briefing on the United States' motion to dismiss [85]; and (3) motion to convert the United States' and Jackson HMA's motions to dismiss to motions for summary judgment and allow discovery pursuant to Federal Rule of Civil Procedure 56(d) [96].  He also seeks leave to submit supplemental briefing [108].  Although Vanderlan first started filing these collateral motions in November 2018, the briefing did not conclude until November 2019.

2

This Order addresses Vanderlan's four motions. And for the reasons explained below, the Court finds a continued stay of discovery is appropriate. Vanderlan's motions for discovery and related relief [83, 96] are denied; his motion to suspend briefing [85] is moot; and his motion for supplemental briefing [108] is granted to the extent the Court considered the authority he cited. The case will otherwise remain stayed because the United States' motion to dismiss must be decided before Jackson HMA's motion to dismiss can be addressed. *See* Order [77] at 7–8.

II.     Analysis

At times, Vanderlan conflates his arguments with respect to Jackson HMA and the United States. But the parties are inherently different—Vanderlan, as relator, stands in the place of the United States, while Jackson HMA is an adverse party. And the two motions to dismiss are fundamentally different—Jackson HMA's motion invokes Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, whereas the United States invokes its statutory authority to seek dismissal of a *qui tam* action under 31 U.S.C. § 3730(c)(2)(A). Accordingly, the Court will address Vanderlan's arguments relative to the United States and Jackson HMA separately.

A.     United States

1.     The Applicable Standard for Dismissal

A threshold issue permeates all pending motions—under what circumstances may the United States dismiss a *qui tam* action? The FCA allows a private party, in this case Vanderlan, to bring a *qui tam* action on behalf of the United States. 31 U.S.C. § 3730(b). But even if the United States declines to intervene, it retains substantial control over the action. *See U.S. ex rel. Vaughn v. United Biologics, LLC*, 907 F.3d 187, 193 (5th Cir. 2018) ("Even when the Government declines to intervene, it remains a distinct entity in the *qui tam* litigation with protected interests."). Relevant here, the FCA provides:

3

> The Government may dismiss the action notwithstanding the objections of the
> person initiating the action if the person has been notified by the Government of
> the filing of the motion and the court has provided the person with an opportunity
> for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A).  Relying on § 3730(c)(2)(A), the United States moved to dismiss

Counts I, II, III, V, and VI of the First Amended Complaint—i.e., all counts asserting EMTALA-

based FCA claims on the Government's behalf.

The standard for granting dismissal under § 3730(c)(2)(A) has produced a circuit split,

and the Fifth Circuit has not yet "directly addressed" which standard is correct.  *Health Choice*

*All. LLC ex rel. U.S. v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123, 2019 WL 4727422, at *2 (E.D.

Tex. Sept. 27, 2019).  In one camp, the D.C. Circuit construed § 3730(c)(2)(A) "to give the

government an unfettered right to dismiss an action."  *Swift v. United States*, 318 F.3d 250, 252

(D.C. Cir. 2003).  The Ninth Circuit took a different approach, adopting a two-part rational-

relation burden-shifting test.  *U.S., ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*,

151 F.3d 1139, 1145 (9th Cir. 1998).  Under that test, before a court may grant dismissal

"notwithstanding the [relator's] objections," 31 U.S.C. § 3730(c)(2)(A), the United States must

demonstrate that dismissal is rationally related to a "valid government purpose," *Sequoia*

*Orange*, 151 F.3d at 1145.  Once the Government does so, the burden then shifts to the relator

"to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal."  *Id.*  For the

following reasons, this Court rejects *Sequoia Orange* and follows *Swift*.

First and foremost, the Ninth Circuit crafted its rational-basis test almost entirely from

misconstrued legislative history.  The court started its analysis with the statutory language and

noted that "the Act actually increased, rather than decreased, executive control over *qui tam*

lawsuits."  *Id.* at 1144.  And it acknowledged that "the government has the right to dismiss the

action, notwithstanding the relator's objection, if the relator is afforded notice and a hearing."

*Id.* (citing 31 U.S.C. § 3730(c)(2)(A)).

Despite that rather clear language, the Ninth Circuit turned to legislative history to define

when a relator can nevertheless object.  It observed:

> The legislative history of the 1986 Amendments supports the district court's conclusion that a meritorious suit may be dismissed upon a proper showing.  The Senate Report states that the [FCA] "provides *qui tam* plaintiffs with a more direct role . . . in acting as a check that the Government does not neglect evidence, cause undue delay, *or drop the false claims case without legitimate reason.*"  S. Rep. No. 99-345, at 25–26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291.  This statement reflects congressional intent that the *qui tam* statute create only a limited check on prosecutorial discretion to ensure suits are not dropped without legitimate governmental purpose.

*Id.* at 1144–45 (emphasis added) (ellipsis in *Sequoia Orange*).  Based on that legislative history,

the Ninth Circuit sought to define what constitutes a "legitimate reason" and endorsed a rational-

basis/burden-shifting test.  *Id.* at 1145–46.

The court cited no statutory language to support its new test, opting instead to again look

primarily to legislative history, finding that:

> [t]his standard also draws significant support from the Senate Report to the False Claims Amendments Act of 1986, *which explained that the relators may object if the government moves to dismiss without reason.*  S. Rep. No. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291.  A hearing is appropriate "if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations."  *Id.*

*Id.* at 1145 (emphasis added).

With deference, Congress did no such thing.  Senate Report No. 99-345—upon which the

rational-basis test rests—was published on July 28, 1986, the same day that S.1562 (the bill to

amend the FCA) was reported out of committee.  That report, as quoted above, was entirely

consistent with S.1562.  The problem is that S.1562 never became law.  Significantly, the

portions of the Senate Report that buttress the rational-basis test relate to statutory language

Congress deleted.  As originally drafted, S.1562 addressed dismissals as follows:

> If the Government proceeds with the action, the action is conducted solely by the Government and it shall not be bound by an act of the person who initiated the action.  If he so requests, the person bringing the action . . . *shall be permitted to file objections with the court and petition for an evidentiary hearing to object to any proposed settlement or to any motion to dismiss* filed by the Government.  The court may grant such an evidentiary hearing only upon a showing of substantial and particularized need.  The person bringing the action may move the court for leave to conduct the action in the name of the United States if, after making its election to take over the suit, the Government does not proceed with the action with reasonable diligence within six months or such reasonable additional time as the court may allow after notice.

S.1526 at 14–15 (emphasis added).

Thus, the original Senate bill said objections "shall be permitted," which is what the

Senate's legislative history suggests.  *Id.*  But Congress dropped that language before final

passage and replaced it with "[t]he Government may dismiss the action notwithstanding the

[relator's] objections" if the relator receives notice and a hearing.  31 U.S.C. § 3730(c)(2)(A).

The Senate Report is irrelevant in this regard, and it is the primary basis of the *Sequoia Orange*

test.  Finally, "[e]ven if we assume that [the Ninth Circuit] gauged Congressional intent

accurately, intentions alone cannot work a repeal of the" statutory language.  *Searcy v. Philips

Elecs. N. Am. Corp.*, 117 F.3d 154, 159 (5th Cir. 1997).[1]

---

[1] Vanderlan relies heavily on this faulty legislative history throughout most of his briefs.  *See, e.g.*, Relator Mem. [84] at 12.  He also cites two circuit-court cases adopting the Ninth Circuit's approach, both of which rely on this same Senate Report.  *See United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1290 n.6 (11th Cir. 2017) (citing Senate Report 99-345 regarding evidentiary hearings, though they were excluded from final text); *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005) (adopting rational-basis test as "comport[ing] with legislative history" among other reasons).  Again, this Court sees no reason to rely on language that Congress ultimately rejected.

By contrast, *Swift* sticks to the statutory language.  As repeatedly noted, Congress allowed the United States to dismiss "notwithstanding the [relator's] objections" if the relator receives notice and a hearing.  31 U.S.C. § 3730(c)(2)(A).  *Swift* first notes that "[t]he section states that 'The Government'—meaning the Executive Branch, not the Judicial—'may dismiss the action,' which at least suggests the absence of judicial constraint."  318 F.3d at 252.  Thus, separation of powers precludes judicial intervention.

In addition, had Congress intended to require a rational-basis test—or any qualifier other than what it provided—"it would have so stated."  *Sec. & Exch. Comm'n v. Am. Trailer Rentals Co.*, 379 U.S. 594, 612 (1965) (examining Congressional intent).  Instead, Congress removed language from the Senate bill that would have expressly allowed the relator "to file objections."  S.1526 at 14.  So, to the extent legislative history is relevant here, it does not support the *Sequoia Orange* approach.

Moreover, Congress *did* include qualifiers in the nearly identically worded 31 U.S.C. § 3730(c)(2)(B).  That section addresses settlements and allows the government to "settle the action with the defendant notwithstanding the objections of the person initiating the action *if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances*."  31 U.S.C. § 3730(c)(2)(B) (emphasis added).  As noted, § 3730(c)(2)(A) addressing dismissals offers no such qualifiers.

These sections stand side-by-side in the FCA yet take different approaches.  "[W]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see also U.S. ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 4:17-

CV-53-GHD-RP, 2019 WL 1305069, at *7 (N.D. Miss. Mar. 21, 2019) (citing *Keene* and contrasting §§ 3730(c)(2)(A) and (B)).

The Court recognizes that it should not construe a statute to nullify statutory language.  In this case, the United States may receive dismissal if the relator "has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."  31 U.S.C. § 3730(c)(2)(A).  The hearing requirement seems a little odd, but it is not necessarily surplusage.  Absent the qualifiers, the United States could unilaterally dismiss a case without the relator's knowledge or an opportunity to explain to the Government why it should persist.  In other words, "the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case."  *Swift*, 318 F.3d at 253.

As a final note, the Fifth Circuit has at least foreshadowed, *en banc*, that *Swift* got it right.  In *Riley v. St. Luke's Episcopal Hospital*, the Fifth Circuit observed:  "This Court also stated that the government retains the unilateral power to dismiss an action 'notwithstanding the objections of the person.'"  252 F.3d 749, 753 (5th Cir. 2001) (quoting *Searcy*, 117 F.3d at 160) (citing 31 U.S.C. § 3730(c)(2)(A)).  The Court later concluded that "the powers of a *qui tam* relator to interfere in the Executive's overarching power to prosecute and to control litigation are seen to be slim indeed when the *qui tam* provisions of the FCA are examined in the broad scheme of the American judicial system."  *Id.* at 756.

Vanderlan correctly describes these quotes from *Riley* as *dicta*, but he misses when suggesting that they "carry no weight."  Relator Reply [84] at 6.  While not controlling, *dicta* "may be followed if sufficiently persuasive."  *Humphrey's Ex'r v. United States*, 295 U.S. 602, 627 (1935).  Here, the *dicta* adds weight to the Court's construction, and other courts consider

the *dicta* to be consistent with *Swift*.  *See U.S. ex rel. CIMZNHCA, LLC v. UCB, Inc.*, No. 17-CV-765-SMY-MAB , 2019 WL 1598109, at *2 (S.D. Ill. Apr. 15, 2019) ("The Fifth and Eighth Circuits are in accord [with *Swift*].");  *U.S. ex rel. Gal-Or v. Northrop Gruman*, No. 4:17-CV-139-O, Order [87-1][2] (N.D. Tex. Oct. 26, 2017) (applying *Swift* and granting the United States' motion to dismiss);  *U.S. ex rel. Nicholson v. Spigelman*, No. 10 C 3361, 2011 WL 2683161, at *1 (N.D. Ill. July 8, 2011) ("Dicta from the Fifth Circuit is in accord [with *Swift*].").  That said, the Court does not rely on *Riley* in finding that *Swift* offers a more faithful construction of § 3730(c)(2)(A) than does *Sequoia Orange.*

Vanderlan pushes back on the *Swift* construction in four main ways.[3]  First, he says the present case is different because it involves racial discrimination.  According to Vanderlan, "[t]he outcome of this case carries more significance" than the "cold contract[-]based dismissal cases" the United States offered to support its motion.  Relator Mem. [84] at 3.  The Court certainly agrees that the allegations are serious and socially significant.  But § 3730(c)(2)(A) is not limited to inconsequential cases or those lacking societal impact.  More to the point, Congress did not offer a different test for cases involving racial discrimination.

Second, Vanderlan says "*Swift* has been criticized as it clearly ignores a relator's role and the Court's duty to act as a check on prosecutorial discretion to make sure that the Government's motion has a legitimate purpose."  Relator Mem. [84] at 12 n.29 (citing S. Rep. No. 99-345, at 25–26; *Ridenour*, 397 F.2d at 935).  But that argument is based on legislative history supporting language that Congress deleted.  Nothing in § 3730(c)(2)(A) requires a "legitimate purpose," *id.*; instead, the

---

[2] A copy of this Order [87-1] is attached to the United States' response [87] to Vanderlan's motion for discovery [83]; it does not appear to be available on Westlaw.

[3] Vanderlan filed numerous briefs addressing these same issues.  Not every argument merits discussion; none would change the Court's construction of § 3730(c)(2)(A).

United States may dismiss the case "notwithstanding [the relator's] objections," 31 U.S.C.

§ 3730(c)(2)(A).

Third, Vanderlan argues that *Swift* does not apply because Jackson HMA has been served. Relator Mem. [84] at 3 n.4; *id.* at 14 n.30. That argument artfully paraphrases *Swift* and misconstrues Federal Rule of Civil Procedure 41(a)(1)(A)(i). In *Swift*, the D.C. Circuit observed that construing the statute to give the United States an "unfettered right to dismiss an action is also consistent with" Rule 41(a)(1)(A)(i). 318 F.3d at 252–53. The court noted, in *dicta*, that if "the government tried to have an action dismissed after the complaint had been served *and the defendant answered*, it might be subject to Rule 41(a)(2), which requires an order of the court 'upon such terms and conditions as the court deems proper.'" *Id.* (quoting Fed. R. Civ. P. 4(6)(2)) (emphasis added).

Vanderlan omitted the emphasized language from his briefs, suggesting instead that *Swift* does not apply when a party "has been served." Relator Mem. [84] at 14 n.30. But Rule 41(a)(1)(A)(i) never mentions "service." Instead, it allows voluntary dismissal "before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). And "Rule 41(a)(1)(A)(i) means precisely what it says by stating that only the filing of an answer or motion for summary judgment terminates the plaintiff's unilateral right to dismiss the action by notice." *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015), *as revised* (May 15, 2015) (citation and quotation marks omitted); *see also Hoyte v. Am. Nat. Red Cross*, 518 F.3d 61, 64 (D.C. Cir. 2008) (applying *Swift* where the United States sought dismissal after the defendant moved to dismiss). Jackson HMA has neither answered nor sought summary judgment, so the *Swift dicta* is inapposite. *See Sibley*, 2019 WL 1305069, at *7 (rejecting same argument for same reasons).

Fourth, Vanderlan alternatively argues that § 3730(c)(2)(A) is inapplicable and that the Court should instead apply § 3730(c)(2)(B) dealing with settlements. *See* Relator Mem. [94] at 2; Relator Reply [114] at 5–6. He bases that argument on *United States ex rel. Schweizer v. Oce N.V.*, where

the D.C. Circuit held that *Swift* did not apply to the Government's motion to dismiss because the Government was seeking dismissal of settled claims.  677 F.3d 1228 (D.C. Cir. 2012).

To begin, Vanderlan twice raised his § 3730(c)(2)(B) argument in reply briefs after premising his opening briefs on § 3730(c)(2)(A).  Generally, "[i]t is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs" because it deprives the non-movant an opportunity to be heard.  *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008).

Regardless, *Schweizer* is distinguishable.  Under § 3730(c)(2)(B),

The Government may settle *the action* with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all circumstances.

(Emphasis added).  In *Schweizer*, the United States agreed to accept money from the defendant in exchange for dismissal of the FCA claims in that action.  *Schweizer*, 677 F.3d at 1231–32.  "[B]ypass[ing] § 3730(c)(2)(B)," the district court dismissed the case under § 3730(c)(2)(A).  *Id.* at 1232.  The D.C. Circuit reversed, holding that "[t]he settlement agreement here falls squarely within § 3730(c)(2)(B):  the government reached an agreement with the defendant to 'settle the action.'"  *Id.* at 1233.

By contrast, the United States has not settled any claims Vanderlan pleaded in this action.  Instead, it seeks dismissal of his pleaded FCA claims so the Office of Inspector General (OIG) can pursue administrative-enforcement proceedings against Jackson HMA.  The enforcement proceedings are neither brought under the FCA nor asserted under the FCA in this action.  Finally, even if § 3730(c)(2)(B) applies, that does not entitle Vanderlan to discovery and/or an evidentiary hearing.  *See Everglades Coll., Inc.*, 855 F.3d at 1289–90 (denying discovery and evidentiary hearing while noting that "relator is afforded an opportunity to highlight existing evidence of impropriety or unreasonableness").

11

In sum, Congress expressly considered allowing relators to object when the United States seeks dismissal of its own claims.  It rejected that approach and stated that the United States may seek dismissal notwithstanding objections if the realtor receives notice and a hearing. Accordingly, the United States has the unfettered right to dismiss actions brought in its name. *Swift*, 318 F.3d at 251; *see also Sibley*, 2019 WL 1305069, at 6–7 (adopting *Swift* and rejecting nearly identical arguments raised by Vanderlan's counsel under similar facts).

### 2. Vanderlan's Discovery-Related Motions

Vanderlan wants to convert the United States' motion to dismiss into a motion for summary judgment, conduct broad discovery to establish that the government is not entitled to dismissal, and argue his position at an evidentiary hearing.  He bases these arguments on *Sequoia Orange*, Senate Report 99-345, and two district-court case that relied upon and expanded *Sequoia Orange*.  *See CIMZNHCA, LLC*, 2019 WL 2409576, at *1–2; *United States v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2018 WL 3208157, at *3 (N.D. Cal. June 29, 2018).  As noted above, Vanderlan seeks that relief in three motions [83, 85, 96].

### a. Motion to Convert [96]

Starting with the motion to convert, Vanderlan asks the Court to employ Federal Rule of Civil Procedure 12(d) and convert the United States' motion to dismiss to one for summary judgment.  He then hopes to employ Rule 56(d) to delay his response to the converted summary-judgment motion until discovery concludes.  The motion is creative but a procedural non-starter.

Rule 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Here, the United States did not move for dismissal "*under*

Rule 12(b)(6) or 12(c)."  Fed. R. Civ. P. 12(d) (emphasis added).  It moved under

§ 3730(c)(2)(A).  *See* Gov't Mot. [80] (citing 31 U.S.C. § 3730(c)(2)(A)).

Vanderlan views that as subterfuge and claims that the Government "clearly tried to

disguise its Motion to Dismiss to avoid reference to the pleading requirements of Federal Rules

of Civil Procedure 8, 9, and 12."  Relator Mem. [97] at 3.  Judge Davidson considered and

rejected this same argument in *Sibley*, holding that "[w]hen the government moves to dismiss in

a False Claims Act case, however, it does so under the statutory authority of 31 U.S.C.

§ 3730(c)(2)(A), not under Rule 12 of the Federal Rules."  2019 WL 1305069, at *4.

Judge Davidson was correct; a motion under § 3730(c)(2)(A) is substantively different

from a motion under Rule 12(b)(6) or 12(c), both of which are premised on the plaintiff's failure

to state a claim.  Significantly, under § 3730(c)(2)(A), the Government could seek dismissal even

if Vanderlan stated a meritorious claim.  *Sibley*, 2019 WL 1305069, at *4 (citing *Ridenour*, 397

F.3d at 936 (affirming dismissal of FCA action under § 3730(c)(2)(A) where government

conceded that relator's claims had merit)).  While Vanderlan relies heavily on cases decided

under Rule 12(b)(6), he has not directed the Court to any authority supporting conversion or

application of Rule 56(d) under these circumstances.  Relator Mem. [97] at 3–4.  Accordingly,

the next question is whether Vanderlan is entitled to discovery under § 3730(c)(2)(A).

      b.     Motion to Reopen Discovery and Set Evidentiary Hearing [83]

In his initial memorandum seeking discovery and an evidentiary hearing, Vanderlan

misstates the applicable standards.  According to him, a relator may obtain an evidentiary

hearing upon "substantial and particularized need," which would exist if he or she "presents a

colorable claim that the . . . dismissal is unreasonable."  Relator Mem. [84] at 14 (citing S. Rep.

99-345 at 26).  While Senate Report 99-345 says just that, it again references a provision

Congress ultimately rejected.  Had the Senate bill passed, it would have provided that the relator "shall be permitted to file objections with the court and petition for *an evidentiary hearing to object to any proposed . . . motion to dismiss* filed by the Government."  S.1526 at 14–15.  But as enacted, the FCA makes no reference to discovery or an evidentiary hearing.

Consistent with the final language, courts have held that the hearing referenced in the statute is *not* an evidentiary hearing.  *See U.S. ex rel. Maldonado v. Ball Homes, LLC*, No. CV 5:17-379-DCR, 2018 WL 3213614, at *4 (E.D. Ky. June 29, 2018) ("Although § 3730(c)(2)(A) entitles [the relator] to 'a hearing' on the government's motion to dismiss, if he requests one, there is no requirement that he be permitted to introduce evidence."); *Nasuti ex rel. U.S. v. Savage Farms, Inc.*, No. 12-30121-GAO, 2014 WL 1327015, at *13 (D. Mass. Mar. 27, 2014) (rejecting the relator's argument that he was entitled to an evidentiary hearing).

Along those same lines, many courts have found "the hearing requirement is satisfied by allowing the relator an opportunity to submit a response to the motion."  *U.S. ex rel. May v. City of Dall.*, No. 3:13-CV-4194-N-BN, 2014 WL 5454819, at *4 (N.D. Tex. Oct. 27, 2014); *see also U.S. ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 4:17-CV-53-GHD-RP, Order [91-1][4] (N.D. Miss Dec. 17, 2018) ("Relator's opportunity to respond to the government's motion constitutes an opportunity to be heard on the motion."); *Greene v. Internal Revenue Serv.*, No. 1:08-CV-0280-LEK-DRH, 2008 WL 5378120, at *2 (N.D.N.Y. Dec. 23, 2008)  ("In addition, although not required by the Act, the Court permitted Plaintiffs to formally oppose the Government's Motion to dismiss.  This Court's consideration of the arguments raised in the Plaintiffs' opposition has

---

[4] The United States attached a copy of the Order [91-1] to its Notice of Supplemental Authority [91]; it does not appear this Order is available on Westlaw.  But a second Order in *Sibley*, granting the United States' motion to dismiss, is reported on Westlaw.  *See Sibley*, 2019 WL 1305069.

provided them with an opportunity to be heard on the Government's Motion."); *U.S. ex rel. Pentagon Techs. Int'l Ltd. v. United States*, No. 00 CIV. 6167 (DAB), 2001 WL 770940, at *7 n.13 (S.D.N.Y. July 10, 2001) (same).

Of course, "[d]istrict courts enjoy 'broad discretion in all discovery matters' and 'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Box v. Dall. Mexican Consulate Gen.*, 487 F. App'x 880, 884 (5th Cir. 2012) (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000)). Here, the Court has concluded that *Swift* applies, and under that standard, Vanderlan has not established a basis for discovery.

Alternatively, even under a rational-basis test, the Court would deny the requested discovery. *Sequoia Orange* did not guarantee discovery or an evidentiary hearing. For example, in *Ridenour*, the Tenth Circuit applied a rational-basis test but found that the trial court did not abuse its discretion by denying the relator discovery designed "to challenge the Government's motivation behind the dismissal." 397 F.3d at 938; *see also Sibley*, 2019 WL 1305069, at *9 (alternatively applying *Sequoia Orange* and denying relator's request for discovery "into the government's purported reasons for seeking dismissal"); *U.S. ex rel. Toomer v. TerraPower, LLC*, No. 4:16-CV-00226-DCN, 2018 WL 4934070, at *6 (D. Idaho Oct. 10, 2018) (denying the relators' requests to conduct discovery and hold evidentiary hearing).

As the Eleventh Circuit explained in the related context of the Government settling a *qui tam* case over a relator's objection, such discovery would be "antithetical to the government's prerogative to end a *qui tam* case brought in its own name." *Everglades Coll., Inc.*, 855 F.3d at 1291–92. The Eleventh Circuit held that "the FCA does not expressly entitle the objecting *qui tam* relator to discovery at all. Further, much like an evidentiary hearing, discovery into the

government's settlement rationale risks converting the court's evaluation of the settlement's reasonableness into a mini-trial on the merits." *Id.* (citations omitted).

Here, the Government has offered three reasons it wishes to end the FCA claims: (1) the Relator's FCA suit has hindered OIG's efforts to settle the administrative claims with Jackson HMA; (2) continued litigation will impose unnecessary costs and burdens; and (3) the FCA claims lack merit. Gov't Mem. [81] at 9. Any one will suffice, but the Court will focus on the second, and to some extent, the third.

"The Ninth Circuit, as well as other courts, have acknowledged that litigation costs represent a valid governmental interest, even if the government concedes that the case has merit." *Toomer*, 2018 WL 4934070, at *5 (citing *Sequoia Orange*, 151 F.3d at 1146). The Government makes no such concession in the present case, arguing instead that the FCA claims are meritless. *See* Gov't Mem. [87] at 8. And while it is not necessary to fully evaluate whether the EMTALA-based FCA claims fail as a matter of law, the United States makes at least a superficial case that they do; turning patients away does not result in any false claims or obligations. *Id.* (citing *U.S. ex rel. Simoneaux v. E.I. DuPont*, 843 F.3d 1033, 1035–36 (5th Cir. 2016) (holding that "potential or contingent penalties are not obligations under the FCA" that would support reverse-FCA liability)).

To be clear, the Court makes no ruling on the merits and references this argument merely to show that the Government has evaluated the FCA claims from a legal standpoint. And it is undisputed that no court has ever recognized the FCA claim Vanderlan now pursues on the Government's behalf. As he has acknowledged, "there is no prior FCA case premised on alleged EMTALA violations." Relator Resp. [54] at 34. The Government would therefore be justified in concluding that success is at best questionable and the end is nowhere in sight.

16

Weighed against all of that, Vanderlan seeks sweeping discovery from the United States.
Although his various briefs offer differing descriptions of what he seeks, two lists seem to be the
most comprehensive.  First, Vanderlan explains in his memorandum in support of re-opening
discovery that

> Relator Vanderlan seeks discovery from the Government in the form of the
> disclosures necessary to satisfy the Government's initial burden.  In addition,
> Relator Vanderlan seeks documents from [Jackson HMA] in response to Relator
> Vanderlan's First Request for Production of Documents served on October 2,
> 2017.  The requested disclosures and discovery are required to determine the
> veracity of the factual issues raised by the Government's Motion:
>
> a)  Relator's Complaint was filed in October 2015.  After multiple continuances,
> the Government declined intervention on August 31, 2017.  The Government
> waited three years to move to dismiss these proceedings.  Relator Vanderlan is
> entitled to discovery to determine whether the Government used these
> proceedings to drive up its settlement with Jackson HMA and is now seeking to
> exclude Relator Vanderlan from any recovery, *i.e.*, an invalid government
> purpose.
>
> b)  The Government relies on one select document to support its position, *i.e.*, the
> Selden Letter.  The Government should not be allowed to disclose one isolated
> document as "support" while simultaneously refusing to disclose all relevant
> documents.  Relator Vanderlan is entitled to discover all documents relating to the
> matters disclosed in the Selden Letter.[5]
>
> c)  The Government allegedly has been investigating EMTALA violations at
> Jackson HMA since these matters were brought to the Government's attention by
> Relator Vanderlan.  The Government has had time to conduct the required cost-
> benefit analysis to support its "unnecessary expenditure" purpose for dismissal.
> Indeed, the Selden Letter specifically informs the Government: "the costs to the
> Government from Vanderlan's case would far exceed any benefit."  Taking one's
> supposed adversary's word as support for dismissal of claims does not reach the
> level of meeting a burden of proof.  Relator Vanderlan is entitled to discover
> whether the Government (or anyone) conducted the required cost-benefit analysis,
> and, if so, to obtain the required documents in support.

---

[5]  The United States has cited a September 27, 2018 letter from Jackson HMA's counsel Jack
Selden stating that the FCA claims are meritless and encouraging the United States to seek
dismissal so Jackson HMA and OIG can address administrative EMTALA issues.  Selden Letter
[86-1].

d)  The Selden Letter refers to internal ongoing discussions between the Government and Jackson HMA regarding the "greater" "potential liability" of Vanderlan's FCA claims.  However, both the Government and Jackson HMA have taken positions on paper that Vanderlan's claims should be summarily dismissed.  Relator Vanderlan is entitled to discover all documents that would tend to impeach or contradict any position by any Party that Relator Vanderlan has not stated a claim on the merits.

e)  Upon receiving the requested initial minimum discovery, there may be a need to obtain additional discovery under guidelines approved by the Court.

Relator Mem. [84] at 10–11.  Next, in his memorandum supporting conversion under

Rule 12(d), Vanderlan explains that

limited disclosures and limited discovery are required to determine the veracity of the factual issues raised.  Relator Vanderlan seeks discovery on the following issues in order to obtain facts and other information essential to justify Relator Vanderlan's opposition to the Government and Jackson HMA's Motions to Dismiss:

a)  The Government's entire argument against the viability of Relator Vanderlan's express certification and implied certification FCA claims is fact-based.  The Government claims "only two of [Vanderlan's 15 representative] cases involve Government insureds."  Next, the Government argues that Relator has failed to identify specific deficiencies in healthcare screening or specific billing charges that were unnecessary due to the unlawful of transfer of patients.[6]

. . . .

b)  The Government suggests that Relator Vanderlan's theory could result in a hospital's forfeiture of all Medicare program payments.  Relator Vanderlan's allegation of forfeiture, *i.e.*[,] a change in the Government's payment position, is not theoretical. Relator Vanderlan's allegation of forfeiture is undisputed.  After investigating EMTALA violations disclosed by Relator Vanderlan, CMS notified Jackson HMA that it would be terminated from the Medicare program.

. . . .

c)  As part of its Motion to Dismiss, the Government argues that Relator Vanderlan has failed to identify specific false certifications made as to particular patients.  Attached as Exhibit "3" to Relator Vanderlan's First Amended Complaint is a form "Patient Transfer Form" that should have been made a part of the chart of each improperly transferred patient.  The Transfer Form requires a

---

[6] Brackets in original. *See* Relator Mem. [97] at 16.

specific certification of compliance with EMTALA.  In addition, Relator
Vanderlan has alleged that a request for payment for each government insured
patient was accompanied by required CMS forms, *e.g.*[,] Form CMS-1500, Form
CMS-1450.  Although Relator Vanderlan disclosed 215 suspected EMTALA
violations/cases, he did not have access to the complete Government billing
records.

. . . .

d)  The Government claims Relator Vanderlan's reverse false FCA claim is
without merit because Relator Vanderlan has not specifically identified any
obligation by Jackson HMA to repay fines and/or penalties to the Government.

. . . .

e)  Relator's Complaint was filed in October 2015. After multiple continuances,
the Government declined intervention on August 31, 2017.  The Government
waited three years to move to dismiss these proceedings.  Now, the Government
is working hand-in-hand with Jackson HMA to dismiss Relator Vanderlan's
claims as part of a settlement, *i.e.*[,] a red flag for improper motive that requires
scrutiny by this Court.

. . . .

f)  The Government and Jackson HMA rely on the Selden Letter and its reference
to the internal DOJ Granston Memo.[7]  As Jackson HMA states in the Selden
Letter, "Jackson HMA believes that the **factors** discussed in the Granston Memo
strongly support a motion to dismiss here." (emphasis added).  Further, Jackson
HMA argues on behalf of the Government that the Granston Memo provides a
"non-exhaustive list of **seven** factors to consider in evaluating whether the
Government should seek dismissal" of a relator's FCA claims." (emphasis
added).[8]

. . . .

g)  In the Selden Letter, Jackson HMA refers to ongoing discussions between the
Government and Jackson HMA regarding the greater potential liability of Relator
Vanderlan's FCA claims in this case. However, both the Government and Jackson
HMA have taken positions on paper that these claims should be summarily
dismissed because they lack legal merit.

---

[7] The Selden letter referenced considerations found in a publicly available memorandum from
Michael D. Granston of the United States Department of Justice.

[8] Emphasis added by Relator.  *See* Relator Mem. [97] at 19.

. . . .

h)  The primary implied false certification FCA line of cases relied on by Relator Vanderlan and Jackson HMA are the Supreme Court and First Circuit's decisions in Escobar.  "Escobar materiality," *i.e.*, whether the Government changed its payment position based on a finding of EMTALA violations, is a fact-based issue. Relator Vanderlan initially met this fact issue in response to Jackson HMA's Motion to Dismiss by referencing CMS's Determination Letter informing Jackson HMA that it would be terminated from the Medicare Program if it did not come into compliance.  Jackson HMA filed an Urgent and Necessitous Motion to Stay Discovery that was granted by the Court.  In its Motion, Jackson HMA expressly represented to the Court that: "Jackson HMA's motion to dismiss . . . does not require any discovery before the Court rules on the purely legal questions presented."  Through its Motion to Dismiss and Motion to Stay, Jackson HMA expressly represented to the Court that discovery was not necessary on the issue of materiality.[9]

. . . .

i)  The Government is required to present a cost/benefit analysis as part of its "expenditure of resources" argument for dismissal. In addition, Relator Vanderlan is entitled to prepare his own cost/benefit analysis to prove the viability of his claims.  The Government allegedly has been investigating EMTALA violations at Jackson HMA since these matters were brought to the Government's attention by Relator Vanderlan.

. . . .

j)  Upon receipt of the requested discovery, there may be additional limited discovery required.

Relator Mem. [97] at 16–21.

The requested discovery is obviously expansive, and as Judge Nye wrote in *Toomer*, "[a]llowing [Vanderlan] to go on a fishing expedition to find support for his speculations 'is generally antithetical to the government's prerogative to end a *qui tam* case brought in its own name.'"  *Toomer*, 2018 WL 4934070, at *6 (quoting *Everglades Coll., Inc.*, 855 F.3d at 1291).  It would also invite an "unjustified 'mini-trial'" on the merits.  *Id.*

---

[9] Ellipsis in original.  *See id.* at 19.

Other courts have likewise observed that the reasons for denying discovery often go hand in hand with the United States' justification for seeking dismissal.  For example, when the United States submits that a *qui tam* suit imposes unnecessary costs, permitting the relator "to conduct discovery of the government or to depose [government] officials would 'allow[] what the Government was trying to avoid in moving to dismiss the action'—costly and time-consuming depositions and discovery with little prospect of significant recovery."  *Spigelman*, 2011 WL 2683161, at *3 (quoting *Ridenour*, 397 F.3d at 938); *see* Gov't Mem. [81] (alleging Vanderlan's suit imposes unnecessary costs).

Nevertheless, Vanderlan says he is entitled to discovery because the Government was "required" to produce a "cost-benefit analysis."  Relator Mem. [84] at 2; *see id.* at 10, 11, 17, 18. In support, he relies heavily on a district court case out of California, *United States v. Academy Mortgage Corp.*, 2018 WL 3208157.  There, the relator alleged that Academy Mortgage "defrauded the Government by falsely certifying loans for government insurance" and requested an evidentiary hearing on the United States' motion to dismiss under § 3730(c)(2)(A).  *Id.* at *1. The court held that to obtain an evidentiary hearing, the relator "must present 'some evidence' that the Government's decision to dismiss was unreasonable, not a result of a full investigation, or based on arbitrary or improper considerations" and "invited the parties to submit evidence pursuant to this standard."  *Id.* (citing *Sequoia Orange*, 151 F.3d at 1145).  When the Government failed to offer any evidence of its investigation, the court denied the motion to dismiss.  *Id.* at 3.

Although *Academy Mortgage* is unmoored to the statutory language, this Court recognizes that the trial judge there was bound by *Sequoia Orange*.  It is not, therefore, surprising that the court focused on whether the Government conducted a "full investigation."

*Id.*  Indeed, the right to object based on "a colorable claim . . . [that] the Government has not

fully investigated" comes straight from *Sequoia Orange*, which quoted Senate Report No. 99-

345.  *Sequoia Orange*, 151 F.3d at 1144 (quoting S. Rep. No. 99-345, at 26).  But as noted, that

report explained text from the Senate bill that never became law.  And as enacted, "the FCA does

not require the government to 'fully investigate' an alleged FCA violation before moving to

dismiss." *Toomer*, 2018 WL 4934070, at *6.[10]

Even assuming a rational-basis test, it is not apparent that *Academy Mortgage* "required"

a cost-benefit analysis as Vanderlan now argues.  *See* Relator Mem. [84] at 2; *see id.* at 10, 11,

17, 18.  The court did mention the relator's cost-benefit argument and observed that the

Government failed to offer any real evidence of a "minimally adequate investigation."  *Acad.*

*Mortg. Corp.*, 2018 WL 3208157, at *3.  The same was not true when the *Academy Mortgage*

judge later heard another *qui tam* case and granted the United States' motion to dismiss without

an evidentiary hearing.  *See United States v. Gilead Scis., Inc.*, No. 11-CV-941-EMC, 2019 WL

5722618, at *1 (N.D. Ca. Nov. 5, 2019) (basing ruling on the parties' briefs and supporting

documents "as well as the oral argument of counsel").  The court noted that *Academy Mortgage*

was different because "there was no indication that the government had conducted any real

investigation of the FCA claim[.]"  *Id*. at *5–6.  If *Academy Mortgage* did intend a mandatory

cost-benefit analysis in every case, then this Court would not follow the holding because it is

inconsistent with the statutory language.

---

[10] Judge Nye's construction makes intuitive sense.  If the Government can move to dismiss "notwithstanding [the relator's] objections," 31 U.S.C. § 3730(c)(2)(A), then how can the relator object that the Government failed to conduct a "full investigation?"  The judicially created exception would swallow the rule.

Nevertheless, the United States has presented a fairly obvious cost-benefit analysis. As noted, Vanderlan asserts a never-before-recognized liability theory that is a long way from striking pay dirt. Even if he prevails at the trial-court level, Jackson HMA would no doubt force him to defend his novel liability theory on appeal. At the same time, this protracted litigation has already been expensive for the United States, which has filed seven legal briefs and three motions. And it will be even more so going forward through the expansive discovery Vanderlan seeks. The breadth of that discovery and the time/money it will require should be obvious. It will also invade the Government's legal analysis and thought processes.[11] Even under *Sequoia Orange*, the discovery request would be denied.

Motions to dismiss under § 3730(c)(2)(A) are unique. Discovery—and evidentiary hearings—are the exception, not the rule in this context. And Relator has not shown this case is such an exception. Vanderlan's motion to reopen discovery and set the United States' motion to dismiss for an evidentiary hearing [83] is denied.

> 3.  Vanderlan's Motion to Suspend Briefing on the United States'
>     Motion to Dismiss

Vanderlan asks the Court to suspend briefing [85] on the United States' motion to dismiss until it rules on his motion to reopen discovery and set an evidentiary hearing [83]. This motion was essentially granted because briefing on the motion to dismiss stalled during the pendency of the motion to reopen discovery. That said, the United States urges the Court to rule on its Motion to Dismiss without further briefing. For the following reasons, the Court finds the

---

[11] Vanderlan's own submissions demonstrate more than a minimal investigation. According to his counsel, since receiving a copy of the Complaint in 2015, the United States has maintained contact with Vanderlan and his counsel throughout its investigation. Welsh Decl. [84-4] at 1–2 (describing interviews with the U.S. Attorney's office, an HHS-OIG agent, and a program integrity analyst with AdvanceMed, acting on behalf of HHS-OIG).

Motion to Suspend [85] is moot and that Vanderlan should have an opportunity to file a final brief.

The United States is certainly correct that Vanderlan has repeatedly and substantively argued against its motion to dismiss. For example, he filed a 25-page "reply" supporting his motion to convert and for discovery that offered a full-throated response to the United States' motion, including new authority. *See* Relator Reply [114]. Vanderlan is nevertheless entitled to file a formal response. When he does, he is instructed to avoid the arguments and authority this Order rejects. The Court has repeatedly read and fully considered those arguments.[12] Vanderlan, however, should address whether a § 3730(c)(2)(A) hearing is required.

B.     Jackson HMA

The Court previously stayed this action until a ruling on Jackson HMA's motion to dismiss to "potentially prevent a significant, unnecessary expenditure of resources by the parties." Order [62]. Since entry of the stay, the United States has moved to dismiss [80] five of the six counts of Vanderlan's Complaint. If granted, only Vanderlan's retaliation claim against Jackson HMA would remain, significantly narrowing the issues. In other words, the progression of the case confirms the continued need for a stay. To the extent Vanderlan seeks to reopen discovery [83] as to Jackson HMA, that request is also denied.

Vanderlan's motion to convert Jackson HMA's motion to dismiss to a motion for summary judgment and allow discovery pursuant to Rule 56(d) is likewise denied. Jackson HMA filed its motion to dismiss under Rule 12(b)(6). JHMA Mem. [52] at 5. As noted above,

---

[12] This is not criticism. Relator's counsel has aggressively pursued these issues for his client and cited the best available authority. The Court simply finds that better arguments exist and will not revisit these holdings at this stage of the case. Vanderlan will obviously have the right at some point to raise these issues on appeal, and the Court expressly finds that they will not be waived when omitted from his response to the United States' motion to dismiss.

Rule 12(d) states that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Vanderlan argues that Rule 12(d) applies here because "Jackson HMA support[ed] dismissal by relying on the Selden Letter[.]"  Relator Mem. [97] at 5.  He is mistaken.  The Selden Letter was issued *after* Jackson HMA filed its motion.  *See* JHMA Mot. [51] (filed November 9, 2017); Selden Letter [86-1] (written September 27, 2018).  The only evidentiary submission attached to Jackson HMA's motion was a newspaper article in support of its public-disclosure argument—an argument it has since withdrawn.  JHMA Resp. [113] at 5 n.2; *see* Agreed Order [70] (withdrawing public-disclosure-bar defense); News Article [51-1] (attached to JHMA motion to dismiss); *see also* Relator Resp. [54] (responding in opposition to JHMA's motion to dismiss and attaching one evidentiary submission—a news article).

Finally, even if Jackson HMA had submitted the Selden Letter to support its Rule 12(b)(6) motion, the Court would not consider it.  *See Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (noting trial court's "complete discretion" to consider matters outside pleadings under Rule 12(d)).  Vanderlan's motion [96] is denied as to Jackson HMA.[13]

C.      Supplemental Authority

All parties have submitted supplemental authority.  Vanderlan filed a motion [108] asking the Court to allow him to submit the Fifth Circuit's decision in *Lemon v. Nurses To Go,*

---

[13] The Court is aware that various evidentiary submissions have made their way into this case through briefing of subsequent motions.  But converting Jackson HMA's motion to dismiss to a motion for summary judgment based on evidentiary submissions attached to the United States' motion to dismiss, or Vanderlan's motion to reopen discovery, or responses thereto, is not warranted.

*Inc.*, 924 F.3d 155 (5th Cir. 2019), as additional authority supporting the following submissions: (1) his response [54] in opposition to Jackson HMA's motion to dismiss, (2) his motion to reopen discovery and set evidentiary hearing [83], and (3) his motion to convert the motions to dismiss and allow discovery [96]. Relator Mot. [108] at 2–3. He attaches an eight-page brief [108-1] addressing the applicability of *Lemon*, 924 F.3d 155.

Jackson HMA responded, stating it "does not oppose Vanderlan's submission of supplemental authority in principle, but his filing mischaracterizes both *Lemon* and the arguments the parties have presented to date in this litigation." JHMA Resp. [109] at 1. Jackson HMA then goes on to set forth its counter arguments as to the applicability of *Lemon*. *Id.* at 1– 4.[14] The Court will consider *Lemon*, and the parties' briefing on its applicability, in evaluating the pending motions. Vanderlan's motion to supplement [108] is granted.

In addition, though not presented as a motion, the Court has considered supplemental authority submitted by Jackson HMA [104] and the United States [91]—Judge Davidson's two opinions [104-1, 91-1] in *Sibley v. Delta Regional Medical Center*, No. 4:17-CV053-GHD-RP (N.D. Miss.).

IV.     Conclusion

The briefing on these issues is voluminous, and in many instances, duplicative. Nevertheless, the Court has endeavored to consider all relevant filings and arguments. Those not addressed would not have changed the result. For the reasons stated, the Court rules as follows:

Vanderlan's motion to reopen discovery and set an evidentiary hearing [83] is denied;

Vanderlan's motion to suspend briefing on the United States' motion to dismiss [85] is moot;

---

[14] The United States did not respond to the motion, and Vanderlan declined to file a reply.

Vanderlan's motion to convert the United States' and Jackson HMA's motions to dismiss

to motions for summary judgment [96] is denied; and

Vanderlan's motion to allow the filing of supplemental authority [108] is granted.

Relator Vanderlan is directed to respond to the United States' motion to dismiss [80] by May 26, 2020.  The United States will then be permitted to file a reply, consistent with the Local Rules.

**SO ORDERED AND ADJUDGED** this the 11th day of May, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE