UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA, *ex rel.*,
W. BLAKE VANDERLAN, MD                                                        PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:15-CV-767-DPJ-ASH

JACKSON HMA, LLC d/b/a
CENTRAL MISSISSIPPI MEDICAL CENTER
a/k/a MERIT HEALTH CENTRAL – JACKSON                                         DEFENDANT

ORDER

This *qui tam* action under the False Claims Act (FCA) is before the Court on motions

[152, 173] of Relator W. Blake Vanderlan, M.D., to reconsider the Court's May 11, 2020 Order

[115] and its January 5, 2021 Order [123].  Together, those orders granted the United States'

motion under 31 U.S.C. § 3730(c)(2)(A) to dismiss the FCA claims.  Having considered the

parties' written submissions, the relevant authority, the oral arguments presented at the April 4,

2024 hearing, and the evidence Vanderlan proffered at that hearing, the Court grants the motions

[152, 173] to the extent that a hearing was held and the Court considered the Government's

motion anew; the motions are otherwise denied.  While Vanderlan's attorneys have vigorously

and passionately pursued the FCA claims, the claims were never his, and the Government has

substantial discretion to seek dismissal.  The United States' motion to dismiss [80] Counts I, II,

III, V, VI is granted, and final judgment will be entered.

I.      Facts and Procedural History

The facts underlying this lawsuit—as well as the procedural history—were laid out in

detail in the Court's May 11, 2020 Order [115].  That Order is incorporated by reference.  In

general, Vanderlan sued Jackson HMA (JHMA) as a relator under the FCA claiming that JHMA

violated the Emergency Medical Treatment and Labor Act (EMTALA) by engaging in "patient

dumping." Am. Compl. [50] at 3. Patient dumping occurs when a medical provider refuses to admit or prematurely transfers patients unable to pay. According to Vanderlan, that conduct triggers the FCA because JHMA—as a condition for payment under Medicare and Medicaid—falsely certified that it complied with EMTALA. *Id.* at 10. His Complaint also included an EMTALA retaliation claim related to the termination of his employment at JHMA.

After initially declining to intervene, the United States later moved to dismiss all but the EMTALA retaliation claim, something § 3730(c)(2)(A) allows it to do. It argued that the costs to continue litigating the FCA claims outweigh the benefits. The Court granted the motion to dismiss without oral argument or an in-person hearing. Vanderlan sought reconsideration.

Things changed a bit after that. First, the Fifth Circuit held that some type of hearing must occur under § 3730(c)(2)(A). *See United States v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 265 (5th Cir. 2021). Then, the United States Supreme Court decided *United States, ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023), specifically addressing the standard applicable to § 3730(c)(2)(A) motions. Based on these developments, the Court invited Vanderlan to supplement his motion for reconsideration. Order [173]. It also severed Vanderlan's EMTALA retaliation claim (Count IV) into a separate action pending only against JHMA so that claim could proceed while the parties contested the dismissal orders. Orders [167, 168]. Finally, based on *Polansky*, the United States intervened in the FCA case without objection. Order [170].

Both motions for reconsideration [152, 173] are now fully briefed, and the Court has conducted an in-person hearing regarding the type of hearing that must occur and whether the motion to dismiss should be granted. With this background, the Court turns to Vanderlan's motion to reconsider [152] and his supplemental motion to reconsider [173].

II.     Standard

Vanderlan seeks reconsideration under Federal Rule of Civil Procedure 54(b).  Under

Rule 54(b), an interlocutory order—like the disputed orders here—"does not end the action as to

any of the claims or parties and *may be revised at any time before the entry of a judgment*

adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b)

(emphasis added).  Thus, a district court may "reconsider and reverse its decision for any reason

it deems sufficient.  *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (quoting

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)).

III.    Section 3730(c)(2)(A), Rule 41, and *Polansky*

The FCA "imposes civil liability on any person who presents false or fraudulent claims

for payment to the Federal Government.  The statute is unusual in authorizing private parties—

known as relators—to sue on the Government's behalf."  *Polansky*, 599 U.S. at 423.  But

because those claims belong to the United States, the statute also gives the Government the

option to dismiss them.  *Id.*  Under § 3730(c)(2)(A),

> [t]he Government may dismiss the action notwithstanding the objections of the
> person initiating the action if the person has been notified by the Government of
> the filing of the motion and the court has provided the person with an opportunity
> for a hearing on the motion.

The Supreme Court considered this provision in *Polansky*, holding that Rule 41(a), which

governs voluntary dismissals, applies in the FCA context with two qualifiers: (1) procedurally,

the FCA requires notice and an opportunity for a hearing; and (2) the court should "consider" the

interests of the relator.  599 U.S. at 436–37.  The parties dispute three issues related to those

qualifiers:  (1) has the United States met its burden for obtaining dismissal; (2) what type of hearing is required; and (3) will dismissal violate Vanderlan's constitutional rights.

      A.     The United States' Burden

*Polansky* resolved a circuit split over the standards applicable to motions under

§ 3730(c)(2)(A).

> In one camp, the D.C. Circuit construed § 3730(c)(2)(A) "to give the government an unfettered right to dismiss an action."  *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003).  The Ninth Circuit took a different approach, adopting a two-part rational relation burden-shifting test.  *U.S., ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998).

Order [115] at 4.  The Third Circuit offered yet another approach, looking to Rule 41(a)'s standards.  *Polansky*, 599 U.S. at 435.  Under Rule 41(a)(1), if the defendant has not filed an answer or a motion for summary judgment, "the plaintiff need only file a notice of dismissal." *Id.*  "But once that threshold has been crossed . . . dismissal requires a 'court order, on terms that the court considers proper.'"  *Id.* (quoting Fed. R. Civ. P. 41(a)(2)).  Rule 41(a)(2) applied in *Polansky*, and the Supreme Court adopted the Third Circuit's approach, holding that "[a] district court should assess a [§ 3730(c)](2)(A) motion to dismiss using Rule 41's standards."  *Id.*; *see id.* ("[T]he Third Circuit's Goldilocks position is the legally right one.").  It also found that "in most FCA cases . . . those standards will be readily satisfied."  *Id.* at 435–36.

      So what must the United States show?  *Polansky* never precisely answers that question, but the Court said "the Government's views are entitled to substantial deference."  *Id.* at 437; *see id.* ("This Court has never set out a grand theory of what Rule [41] requires, and we will not do so here.").  "If the Government offers a reasonable argument for why the burdens of continued litigation outweigh the benefits, the court should grant the motion.  And that is so even if the relator presents a credible assessment to the contrary."  *Id.* at 438; *see id.* ("The Government

gave good grounds for thinking that this suit would not do what all *qui tam* actions are supposed to do:  vindicate the Government's interests.").  This minimal showing makes sense because the claim belongs to the United States, and the statute expressly says the Government may dismiss it "notwithstanding" the relator's "objections."  31 U.S.C. § 3730(c)(2)(A).

As noted, *Polansky* fell under Rule 41(a)(2), where court approval is required; Vanderlan's case falls under Rule 41(a)(1), where it is not.  *Polansky* at least anticipated such cases:

> The Court of Appeals briefly addressed the purpose of a hearing when dismissal is sought before an answer is filed.  *See* 17 F.4th 376, 390, n.16 (CA3 2021).  In that context, Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role.  So what is the court supposed to do at the hearing the FCA requires?  The Third Circuit suggested that Rule 41's standards "rest atop the foundation of bedrock constitutional constraints on Government action."  *Id.*, at 390, n.16.  So a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal "violate[s] the relator's rights to due process or equal protection."  *Ibid.*  But because Polansky has not raised a claim of that sort, we do not consider the circumstances in which, or procedures by which, a court should find the Constitution to prevent the Government from dismissing a *qui tam* action.

599 U.S. at 437 n.4 (alteration in *Polansky*, citations unaltered).  This is dicta.  But it still seems that a straight-up Rule 41(a)(1) voluntary-dismissal procedure would not satisfy § 3730(c)(2)(A); the statute requires notice and an opportunity for a hearing.

The parties agreed during oral argument that no binding authority indicates what the United States must show at a § 3730(c)(2)(A) hearing in the Rule 41(a)(1) context.  But logically, it would be no more than what Rule 41(a)(2) requires, because that rule contemplates court approval while Rule 41(a)(1) does not.  Though Rule 41(a)(2) is a higher standard, the Court will apply it here because the United States meets it.

The United States presented a "reasonable argument" why dismissal under § 3730(c)(2)(A) is appropriate.  *Id.* at 438.  It believes the burden outweighs the benefit, citing

how litigious this case has been, how long it has been pending, the effort the United States has already expended monitoring the case and responding to pleadings, and the work still left to do. Tr. [191] at 42–44.  On that last point, the United States cites the potential for continued (or increased) demand on its resources and time, as the case is still at the pleading stage and JHMA could seek discovery from the Government that would include privileged materials.  Tr. [191] at 43–44.

Equally compelling is the Government's argument that Vanderlan's FCA theory is novel—something he concedes—and that a favorable result would be the "first" of its kind.  Tr. [191] at 15 (counsel for Vanderlan) ("This will be the first time that an EMTALA case, if we survive, will be found to be a basis of an FCA claim . . . ."); *see id.* at 14 (counsel for Vanderlan) ("I'm not going to disagree it's a novel theory.").  The United States is unimpressed with Vanderlan's theory and believes he lacks evidence of a valid FCA claim.  *Id.* at 43.  In fact, it is concerned that the case will create bad law that may dissuade different EMTALA cases from going forward.  *Id.* at 49–50.

The Government's reasons for asking the Court to dismiss Vanderlan's FCA claims track those found sufficient in *Polansky*.  599 U.S. at 438.  There, "[t]he Government, in moving to dismiss, enumerated the significant costs of future discovery in the suit, including the possible disclosure of privileged documents.  At the same time, the Government explained in detail why it had come to believe that the suit had little chance of success on the merits."  *Id.*  The Supreme Court agreed that dismissal was warranted and noted—"this case is not a close call."  *Id.*

Nor is this a close call.  The United States reasonably argues that the costs would outweigh the benefits of proceeding on a novel FCA claim.  And even if Vanderlan advanced

"credible" arguments for allowing the case to proceed, they do not overcome the "substantial deference" due the United States. *Id.* at 437–38.

Finally, the Court must reject Vanderlan's argument that the discriminatory nature of the alleged EMTALA violations makes the case "exceptional" and beyond the Government's right to seek dismissal under § 3730(c)(2)(A). *Polansky* uses the word "exceptional" one time, observing "that [§ 3730(c)](2)(A) motions will satisfy Rule 41 in all but the most exceptional cases." *Id.* at 437. That statement merely underscores Rule 41's deferential standard. *See U.S. ex rel. Carver v. Physicians Pain Specialists of Ala., P.C.*, No. 22-13608, 2023 WL 4853328, at *7 (11th Cir. July 31, 2023) ("Although [the relator] may have spent considerable resources along the way, this is not an 'exceptional case' where the government's motion to dismiss under § 3730(c)(2)(A) fails to satisfy Rule 41's standards."). There is no suggestion that the Court intended to create different standards under Rule 41 depending on the substantive nature of the FCA claim.

Having now reconsidered the Government's motion to dismiss after additional briefing and a hearing, the Court finds no reason to alter or amend its finding that the motion [80] should be granted. *See* Orders [115, 123].

B.      The Court can Make this Ruling Without Discovery or an Evidentiary Hearing.

Vanderlan insists that the Court must allow discovery on the United States' motion and conduct an evidentiary hearing before ruling. *Polansky* does not address that point, but it does say that "[i]f the Government offers a reasonable *argument* for why the burdens of continued litigation outweigh its benefits, the court should grant the motion." 599 U.S. at 438 (emphasis added). The term "argument" does not suggest that the Government must present evidence or that an evidentiary hearing is required. *Id.* Nor would a Rule 41(a)(1) dismissal involve

evidence.  But, in fairness, *Polansky* never tackles this issue and expressly declines to consider the procedures that should apply under Rule 41(a)(1).  *Id.* at 437 n.4.

The Fifth Circuit has considered the type of hearing § 3730(c)(2)(A) requires, albeit before *Polansky*.  In *Eli Lilly*, the court noted that a "hearing" typically involves "judicial involvement and action."  4 F.4th at 264.  But it stopped short of pronouncing a road map for a §3730(c)(2)(A) hearing:  "While some type of actual hearing is required, we need not decide the precise bounds of the government's discretion to dismiss *qui tam* lawsuits."  *Id.* at 265 (citing *United States v. Gonzales*, 520 U.S. 1, 11 (1997)).  The Fifth Circuit was able to avoid defining "hearing" more precisely because "[e]ven assuming that § 3730(c)(2)(A) requires the hearing to be an evidentiary hearing, there was no error because [the relator] declined to offer evidence at the hearing."  *Id.* at 266.

Looking more closely at the statutory text, nothing in § 3730(c)(2)(A) suggests a right to discovery or an evidentiary hearing.  Indeed, an earlier version of the bill would have allowed relators to "file objections with the court and petition for an evidentiary hearing."  S.1562, 99th Cong. (1986), quoted in *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088, 1125 (D. Utah 2019).[1]  Even under that earlier draft, the legislative history explained that such hearings would not be guaranteed:  "The Committee does not intend, however, that evidentiary hearings be granted as a matter of right.  We recognize that an automatic right could provoke unnecessary litigation delays." ¡S. Rep. No. 99-345 at 5291 (1986).  That version of the bill never passed, and the final text dropped all reference to an evidentiary hearing or the right to object.  Section 3730(c)(2)(A) requires only notice and a "hearing."

---

[1] *See* Order [115] at 5–6 (discussing S.1562).

Here, the United States' motion to dismiss [80] provided notice, and Vanderlan has known since day one that dismissal was possible under § 3730(c)(2)(A). The hearing requirement has also been met. The Court decided the Government's motion after a hearing on April 4, 2024, during which JHMA, Vanderlan, and the United States argued their positions and Vanderlan proffered evidence that the Court considered. Neither *Polansky* nor *Eli Lilly* requires more. At most, both cases demand "judicial involvement," and that occurred when the Court conducted the hearing to consider whether the Government had offered a reasonable argument for dismissal. *Eli Lilly*, 4 F.4th at 264; *see Polansky*, 599 U.S. at 437 ("Part of the district court's task is to consider [the relator's] interests.").

Even if some FCA cases may require an evidentiary hearing on a government motion to dismiss, this case is not one of them. There is no dispute that Vanderlan's pleaded FCA theory is novel. There is also no dispute the United States has already invested considerable time and resources in this protracted case. And while Vanderlan argued that he has carried this case to the virtual end zone, the litigation is far from over. Indeed, it remains at the pleading stage, and even assuming a successful trial, the novel nature of the suit all but guarantees an appeal. None of this requires discovery.

In fact, the requested discovery bolsters the United States' position that delay, burden, and privilege warrant dismissal. The discovery Vanderlan seeks regarding the Government's cost-benefit analysis would likely probe its work product and the reasons it finds the FCA claim lacking. The Government's counsel explained the imposition during the hearing:

> Vanderlan's counsel I think made it pretty clear in his supplemental response that it's more likely than not he's going to depose Lynn Murray, who's an Assistant United States Attorney. Having been involved in defending several lawyers who have been deposed at the Department of Justice, that is a very messy process with all sorts of privilege issues, sometimes even presided over by a court.

Tr. [191] at 43.  Those are legitimate interests that *Polansky* cited as a basis to grant dismissal in the first place.  *See Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973, at *1 (2d Cir. Aug. 21, 2023) (affirming dismissal under § 3730(c)(2)(A) without discovery or an evidentiary hearing).

  C.  Constitutional Concerns

  Vanderlan submits that his constitutional rights are at play, relying on footnote 4 in *Polansky*.  Supp. [174] at 15–18 (citing *Polansky*, 599 U.S. at 436 n.4).  Assuming this is true, the Court finds no constitutional concerns that would override the Government's right to seek dismissal of its own claim.

  Starting with procedural due process, Vanderlan was provided notice and an opportunity to be heard through briefing, oral argument, and the proffered exhibits.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 313 (1950)).  His right to substantive due process has also been satisfied.  As noted, the Court finds that the United States' decision to dismiss is reasonable; in other words, it is not arbitrary or capricious.  *See* Tr. [191] at 48–49; *see also Lewis v. Univ. of Tex Med. Branch at Galveston*, 665 F.3d 625, 631 (5th Cir. 2011) ("[S]ubstantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest.") (quoting *Texas v. Walker,* 142 F.3d 813, 819 (5th Cir. 1998)).

IV.     Section 3730(c)(2)(B)

In his motion and supplement, Vanderlan renews his argument that this case falls under

§ 3730(c)(2)(B):

> The Government may settle the action with the defendant notwithstanding the
> objections of the person initiating the action if the court determines, after a
> hearing, that the proposed settlement is fair, adequate, and reasonable under all
> the circumstances.  Upon a showing of good cause, such hearing may be held in
> camera.

Vanderlan also insists that he is entitled to discovery before a § 3730(c)(2)(B) hearing.

That might have been so had there been a settlement, but there hasn't.  At best, there have

been administrative-enforcement settlement discussions concerning JHMA's alleged EMTALA

violations that have taken place between JHMA and the Office of the Inspector General of the

Department of Health and Human Services—not the Attorney General or his designee as

required to settle an FCA claim.  *See* U.S. Resp. [175] at 7-8 (citing *U.S. ex rel. Michaels v.

Agape Senior Community, Inc.*, 848 F.3d 338-40 (4th Cir. 2017); 31 USC § 3730(b)(1)).

Vanderlan disagrees, based mostly on a letter from JHMA's counsel (Selden) to an

Assistant United States Attorney, suggesting that the EMTALA claims would be harder to settle

if the FCA case goes forward.   Selden Letter [86-1].  Vanderlan describes this as evidence of an

agreement, but nothing in the letter suggests an agreement was reached.  It states instead that the

FCA claims are "disrupting efforts" to address the issues and mentions "good-faith discussions

in an effort to reach a resolution."  *Id.*  Nor does the timing of the Selden letter support

Vanderlan's argument.  On September 5, 2018, the United States announced in a court filing that

it was "currently in the process of evaluating whether to file a statement of interest or to seek

dismissal of this case pursuant to 31 U.S.C. § 3730(c)(2)(A)."  Resp. [73] at 1.  The Selden letter

is dated September 27, 2018, and merely encourages the Government to follow through with a dismissal.  Selden Letter [86-1].

Finally, during the April 4 hearing, counsel for the United States and JHMA stated—as officers of the Court—that no settlements have been reached and no agreements to agree.  That distinguishes Vanderlan's primary authority, *United States ex rel. Schweizer v. Océ N.V.*, when the court held that a settlement agreement fell under § 3730(c)(2)(B) because the government had "reached an agreement to dispose of Counts I and II" asserting claims under the FCA.  677 F.3d 1228, 1231 (D.C. Cir. 2012).  Absent a settlement agreement, § 3730(c)(2)(B) does not apply.[2]

## V.    Conclusion

The Court has considered all arguments raised by the parties in their briefing and at oral argument; those not specifically addressed would not have changed the outcome.  Vanderlan's motions to reconsider [150, 173] are granted to the extent that a hearing was held and the Court took a fresh look at the Government's motion to dismiss.  Having conducted a de novo review considering the parties' filings and the applicable law, the United States' motion to dismiss [80] Counts I, II, III, V, and VI is granted.

Because Count IV, the only remaining count, has been severed, this action will be dismissed.  Vanderlan's motion to amend and motion for partial summary judgment are

---

[2] In his supplemental briefing and at the hearing, Vanderlan argued that he needed discovery on the purported settlement and the valuation of the claims, citing *United States v. U.S. ex rel. Thornton*, 207 F.3d 769 (5th Cir. 2000).  But in *Thornton*, "[t]he government . . . settled with each of the defendants," and "Thornton challenged the adequacy of the settlement, triggering the FCA's statutory fairness hearing" under § 3730(c)(2)(B).  *Id.* at 770.  Because there is no settlement here, § 3730(c)(2)(B)—and an inquiry into whether "the proposed settlement is fair, adequate, and reasonable"—is not triggered.  31 U.S.C. § 3730(c)(2)(B).

considered moot.  A separate judgment will be entered as required by Federal Rule of Civil

Procedure 58.

       **SO ORDERED AND ADJUDGED** this the 12th day of April, 2024.

                               s/ *Daniel P. Jordan III*
                               CHIEF UNITED STATES DISTRICT JUDGE